### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff*,<br><br>vs.<br><br>CARLOS COTTO-CRUZ,<br>*Defendant*. | CRIMINAL NUMBER: 21-320 (ADC) |

### MOTION TO SUPPRESS EVIDENCE

TO THE HONORABLE COURT

Mr. Carlos Cotto-Cruz represented by the Federal Public Defender for the District of Puerto Rico, through the undersigned counsel, respectfully moves the Court to suppress all evidence resulting from the illegal entry and ensuing search of the Barrio Gato home by the Puerto Rico Police ("PRPB") officers on May 7, 2021.

### Introduction

Mr. Cotto had an outstanding arrest warrant on unrelated charges pending in the local Court of First Instance, Caguas Court. PRPB agents from the Special Arrests and Extraditions Division received information about where Mr. Cotto may be living. PRPB officers went to a private home in Barrio Gato, Orocovis. Upon arrival at the home, the agents busted through the front door to arrest Mr. Cotto. Mr. Cotto came to the living room and immediately surrendered to PRPB agents. Notwithstanding his arrest, the PRPB agents continued to search his entire house. During the warrantless search of his home, the PRPB officers seized firearms and drugs, the evidence forming the basis of the charges pending against Mr. Cotto. The initial entry and ensuing search of Mr. Cotto's home was conducted in violation of the Fourth Amendment, and the physical evidence

1

seized and any statements made as a result of this unconstitutional police conduct must be suppressed.

**Factual Background**

### I. Government's Version of Facts[1]

A Caguas municipal court judge signed an arrest warrant against Mr. Cotto on January 20, 2021. At some time thereafter, PRPB agents received information from a source that Mr. Cotto was allegedly staying in a residence in Barrio Gato in Orocovis, Puerto Rico. The house is located at road 155, km 32.9, in the interior of Barrio Gato. On May 7, 2021, around 10:00 a.m., PRPB agents broke down the front door to the home and executed the Caguas municipal court arrest warrant against Mr. Cotto. The PRPB agents did not have a search warrant for the residence. PRPB agents searched the home and used a K-9 in doing so. PRPB agents seized the contraband from different areas in the home.

### II. Mr. Cotto's Version of Facts[2]

During the morning of May 7, 2021, Mr. Cotto and a female companion were asleep in the home he was staying at in Barrio Gato, Orocovis. He was in the master bedroom at the back of the home, and there were no other occupants in the house. Mr. Cotto heard noises outside, and he realized it was agents. The agents broke down the door. The agents ordered Mr. Cotto down and handcuffed him immediately in the entrance area of the house. He surrendered to agents without incident. The female companion came to the bedroom door, which looks out onto the living room and main entrance, and the agents

---

[1] These facts are taken from DEA-6 and FBI-302 Investigation reports and additional documents provided to counsel in discovery.

[2] This recitation of facts is supported by Mr. Cotto's declaration, attached as **Exhibit 1**. Any representations made on behalf of Mr. Cotto in this motion or in his declaration are solely for the purposes of suppression proceedings.

intervened with her without incident immediately. Mr. Cotto and the female companion were placed in separate areas of the property. Mr. Cotto was eventually taken, arrested, outside, while the agents searched the entire home. This search lasted hours. The agents also used a K-9 during the search. Eventually, agents placed Mr. Cotto in a patrol car and drove him to the police station. Later, he was interviewed by federal agents. The house the PRPB searched is in Barrio Gato, Orocovis, Puerto Rico. The house is rented, and Mr. Cotto was living in the home in the months prior to his arrest. The home has a living room, entry way, dining area, kitchen, three bedrooms, two bathrooms, a long driveway, a small yard, and deck.

## Discussion

Mr. Cotto challenges the "source of information" as not providing reasonable suspicion to enter the home, as well as the legality of the PRPB officers' ensuing search. The Supreme Court has expressed a strong preference for warrants for searches of houses. *See United States v. Jeffers*, 342 U.S. 48, 51 (1951) ("Over and again this Court has emphasized that the mandate of the Amendment requires adherence to judicial processes."). As the search in this case was warrantless, the government bears the burden of establishing that it was reasonable under the Fourth Amendment. *See United States v. Melendez*, 301 F.3d 27, 32 (1st Cir. 2002).

### I. **An uncorroborated "source of information" does not provide a sufficient basis to enter a private residence.**

On the morning of Mr. Cotto's arrest, the PRPB agents gathered in a raid position in front of the home's front door and broke it down to enter the foyer. The PRPB's actions gave rise to the first constitutional violation: the warrantless and illegal entry into the home. In response to this violation, the government will inevitably cite to the arrest

3

warrant it possessed for Mr. Cotto. In *Payton v. New York,* however, the Supreme Court held that police officers attempting to execute an arrest warrant have "limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." 445 U.S. 573, 603 (1980); *see also Mascorro v. Billings,* 656 F.3d 1198, 1205 (10th Cir. 2011) ("[A]n arrest warrant does not give police carte blanche to enter any dwelling in search of the object of the warrant").

*Payton* requires a two-prong inquiry to determine whether the PRPB had a sufficient basis to believe that Mr. Cotto (1) lived at the Barrio Gato home and (2) was at the home at the time of their entry. 445 U.S. at 603; *see also United States v. Werra*, 638 F.3d 326, 336-37 (1st Cir. 2011). An uncorroborated source of information as to where a suspect may be living is not enough.

For example, in *United States v. Werra,* the First Circuit held that information given to officers by an informant did not support reasonable suspicion that the individual they were seeking to arrest on a warrant lived at the residence. *Id.* at 337-38. Specifically, the informant had only told officers that at some point "recently" she had seen the individual at the residence, and the residence she described was not the address on the arrest warrant. *Id*. Further, the First Circuit noted, officers did not conduct surveillance or take other steps to verify the individual they sought was not temporarily staying at the residence they later entered. *Id*.

Here, the facts here do not support either prong of the *Payton* test. First, the arrest warrant, signed on January 20, 2021, lists the known address of Mr. Cotto as being in Caguas, Puerto Rico:

4



*Redacted excerpt from the Caguas arrest warrant*

Further, the information on the Puerto Rico DAVID system also lists the Caguas address for Mr. Cotto. In other words, there was absolutely nothing in any PRPB database tying Mr. Cotto to the Barrio Gato address. The only information suggesting Mr. Cotto was residing at the Barrio Gato home was a "source of information." No further information has been provided. No information as to the source, its origins, its reliability, has been provided. Moreover, there is nothing to suggest PRPB conducted surveillance, identified a vehicle linked to Mr. Cotto, interviewed neighbors, etc. These facts do not permit a "reasonable belief" or probable cause to believe he was present at the home.

Authority from both the First Circuit and its sister courts support this conclusion. In the above cited *Werra* case, the First Circuit found that the informant's tip that she had recently seen suspect at a residence and that he was "staying" there an insufficient basis for warrantless entry into home. The court deemed the information "skimpy evidence."

5

*Id.* at 338. In *United States v. Hardin*, the police received information from an informant (who had provided reliable information in the past) indicating a suspect would be staying at a specific apartment "if" he was in the area. 539 F.3d 404, 421 (6th Cir. 2008). He also described the suspect's car and a possible companion. *Id.* The Sixth Circuit found the tip "did not establish even a lesser reasonable belief" the suspect resided at the location. *Id.*

Second, assuming the unsupported tip was somehow sufficient to support probable cause to believe Mr. Cotto was at the Barrio Gato home, there was absolutely no information suggesting he would *be home at the time the warrant was executed*. As mentioned above, there was no attempt to corroborate the information received. Moreover, there was absolutely no reason to believe that Mr. Cotto was in fact at this particular residence at this particular time of day: ten in the morning (as compared to, for example, the middle of the night). *See Hardin*, 539 F.3d at 423-424 (even if officers "reasonably suspected that [the suspect] was generally living at this residence … they had essentially no evidence to indicate [he] was then inside the apartment."); *United States v. Young*, 835 F.3d 13, 22 (1st Cir. 2016) ("In cases where time of day has provided a basis for believing a suspect would be at home, the location of the suspect's residence was well established – making it more likely that he or she would be there.") (internal quotations omitted).

### II. **The PRPD officers' search of the home was outside the scope of the arrest warrant.**

After forcing entry into the home, the PRPB quickly arrested the Mr. Cotto and the female companion, the only occupants, without incident. The officers then proceeded to conduct an hours-long search of the home. Here, even assuming some sort of valid entry, Mr. Cotto was already custody at the time the search occurred. A search of a home must

6

be supported by probable cause and be executed pursuant to a particularized warrant authorizing the search – something the PRPB did not possess. Arrest warrants are not search warrants. *See Steagald v. United States*, 451 U.S. 204, 212-215, 217-222 (1981). Any further search of a private residence is presumptively outside the scope of the arrest warrant.

Here, the government's version of the facts states that the PRPB received intelligence that Mr. Cotto, who had an outstanding arrest warrant from Caguas municipal court, was living in a rented house in Barrio Gato, Orocovis. The PRPB planned an operative to execute the arrest warrant against Mr. Cotto. Upon arrival to the Barrio Gato home, around 10:00 a.m., multiple agents executed the arrest warrant, causing damage to the front door and a window upon entering. PRPB officers decided to enter and search the entire home. Photographs provided in discovery depict suitcases that were opened, closets opened, mattresses overturned, toilet lids opened, etc. It is undisputed that the arrest warrant was limited to Mr. Cotto's person, and once the PRPD had Mr. Cotto in handcuffs and the female companion secured outside the home, there was no justification for a continued search of the house. As such, the PRPD agents exceeded the scope of the warrant, and all evidence found is result of an illegal search of a private residence.

III.   **No Exceptions to the Warrant Requirement Apply**

**A. The PRPD exceeded the search incident to arrest exception.**

Warrantless searches of private residences are presumptively unreasonable under the Fourth Amendment. *Payton v. New York*, 445 U.S. 573, 586 (1980). The presumption can be rebutted only by a few specifically established and well-delineated exceptions. The government bears the burden of establishing the legitimacy of its warrantless search, and

that burden is a heavy one. *United States v. Akrawai*, 920 F.2d 418, 421 (6th Cir. 1990); *see also United States v. Lopez*, 380 F.3d 538, 543 (1st Cir. 2004)).

The basic prerequisite for a search is that the underlying arrest be lawful, and in the case of an arrest in a private building, that there be a valid arrest warrant. Based on the fundamental tenant that the license to conduct a search without prior judicial approval should be strictly circumscribed by the necessities of the moment, the scope of the search incident to arrest is limited to the person of the arrestee and the "grabable space" from which he could reach weapons or evidence. *See Chimel v. California*, 395 U.S. 752 (1969). Searches incident to arrest have their limits, and they must be both reasonably related to the area of the arrest (the area in the immediate control of the defendant) and they must be contemporaneous to the arrest itself. *See e.g., United States v. Erwin,* 507 F.2d 937 (5th Cir. 1975) (search of a bedroom for weapons was held not to be incident to arrest because defendant was in living room with another officer and could pose no threat to officers).

At most, the PRPB could search Mr. Cotto and his surrounding area, namely, the living room. Yet the PRPB engaged in an hours long extensive search of the home.

### B. The PRPB also exceeded the protective sweep exception

The government will likely allege that the PRPB was entitled to conduct a "protective sweep." "A protective sweep is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *United States v. Delgado-Pérez*, 867 F.3d 244, 251 (1st Cir. 2017). In order for a warrantless search to be a protective sweep, "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on

8

the arrest scene." *Maryland v. Buie*, 494 U.S. 325, 334 (1990). Once the subject is securely in custody and the immediate exigencies of the arrest disappear, so too does the excuse for circumventing the warrant process. *See United States v. Serrano-Acevedo,* 892 F.3d 454 (1st Cir. 2018).

Here, the warrantless search of Mr. Cotto's home was not justified by protective sweep incident to his arrest. First, PRPB agents immediately arrested Mr. Cotto, without incident, in the living room of the home. Second, the female companion had already appeared in the bedroom doorway, and she too was immediately arrested without incident. There were no other persons in the home. There was no reasonable inference to be made by the PRPB that any other persons or suspects were in the house at the time of the sweep. *See Serrano*, 892 F.3d at 459-60 (holding a protective sweep unreasonable because there were no facts supporting a theory that a third person remained in the home after the suspect and his family came out); *United States v. Colbert*, 76 F.3d 773 (6th Cir. 1996) (an officer's lack of information of whether anyone was inside the home does not justify a warrantless protective sweep of the defendant's home).

The PRPB were not justified in abandoning the search warrant requirement. There was no evident risk of destruction of evidence, as all persons in the house were immediately arrested and later taken outside, and Mr. Cotto was in handcuffs. Moreover, a protective sweep is a quick search of the building, not an hours long intensive search of every room, cabinet, closet, toilets, mattresses, etc, as the PRPB did here.

### C. The Plain View exception does not apply

Additionally, none of the evidence seized by PRPB agents was in plain view. And in any event, to justify a warrantless seizure based on plain view, the officers (1) cannot have violated the Fourth Amendment "in arriving at the place from which the evidence

9

could be plainly viewed"; (2) the items "incriminating character must also [have been] immediately apparent"; and (3) "not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself." *Horton v. California*, 496 U.S. 128, 136-37 (1990). Mr. Cotto submits that first, no evidence was in plain view and second, the PRPB violated the Fourth Amendment in arriving inside the home. Regardless, any suggestion by PRPB agents that evidence was in plain view upon entering the Barrio Gato home is a disputed issue for a credibility determination at a suppression hearing. Assuming the truth of the rest of the PRPB's version of facts, once they had arrested Mr. Cotto, there was no immediate threat or safety measure to justify a further search or sweep.

### D. No consent was given to search the home.

Finally, neither Mr. Cotto nor the female companion provided any consent to search the home. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, (1973) (finding a consensual search is one of the exceptions to the warrantless search).

By the time Mr. Cotto was arrested, there was no impracticability of obtaining a search warrant for the house. There were no exigent circumstances, risk of destruction of evidence, or immediate danger to the PRPB agents or other individuals, nor was there risk of escape.[3] PRPB agents had a legitimate arrest warrant for Mr. Cotto's person, but they had no search warrant for the Barrio Gato home. Nonetheless, they searched the home without obtaining a warrant or consent to do so. This is a clear violation of the

---

[3] The home in Barrio Gato is on the top of a mountain in Orocovis, and it has a long, narrow driveway to reach it. Escape, particularly once surrounded by agents, would have been physically impossible.

Fourth Amendment and any evidence obtained as a result of the illegal search of the home must be suppressed.

### Mr. Cotto's Statements

Any statements Mr. Cotto made following the illegal search must also be suppressed as fruits of the Fourth Amendment violations. *See Wong Sun v. United States*, 371 U.S. 471 (1963); *United States v. Shetler*, 665 F.3d 1150 (9th Cir. 2011) (the exclusionary rule applies both to direct products of an illegal search, that is, the physical evidence found during the search itself, and to indirect products of the illegal search, that is, statements or physical evidence subsequently obtained in part as a result of the search, if they bear a sufficiently close relationship to the underlying illegality).

### Request For Hearing

For the foregoing reasons, all physical evidence and any incriminating statements in this case resulted from Fourth Amendment violations. As such, they must be suppressed. Mr. Cotto submits that he has made a sufficient threshold showing that the material facts regarding the validity of the entry into the home and the search are in dispute. *See United States v. Allen*, 573 F.3d 42, 51 (1st Cir. 2009). Accordingly, Mr. Cotto respectfully requests an evidentiary hearing on his motion to suppress.

I HEREBY CERTIFY that on this date I electronically filed the present notice with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the parties of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 25th day of February, 2022.

                                              **ERIC ALEXANDER VOS**
                                              Chief Defender
                                              District of Puerto Rico

                                              ***S/Jessica E. Earl***
                                              Jessica E. Earl
                                              Assistant Federal Public Defender
                                              USDC-PR No. 302613
                                              241 F.D. Roosevelt Ave.
                                              Hato Rey, P.R. 00918-2441
                                              (787) 281-4922/ Fax (787) 281-4899
                                              E-mail: Jessica_Earl@fd.org