THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CARLOS COTTO-CRUZ, et al.,<br><br>Defendants, | Crim. No. 21-320-1 (ADC-BJM) |

**OPINION AND ORDER**

Before the Court is defendant Carlos Cotto-Cruz's ("defendant") motion to set aside the Report and Recommendation ("R&R") at **ECF No. 120** issued by Magistrate Judge Bruce J. McGiverin on June 29, 2023, due to an alleged *Jencks* violation. **ECF No. 153**.[1] The United States of America ("government") opposed. **ECF No. 175**. Defendant filed a reply. **ECF No. 182**. For the following reasons, the Court DENIES the motion.

**I.   Relevant Background**

In his R&R, the Magistrate Judge recommended that the Court grant in part and deny in part defendant's motion to suppress several pieces of evidence seized in the house in which he was arrested on May 7, 2021 in Orocovis, Puerto Rico.[2] Before reaching his recommendation, the Magistrate Judge held three days of hearings—on May 25 and June 6 and 9, 2023. **ECF Nos. 106,**

---

[1] In reference to the Jencks Act, 18 U.S.C. § 3500, and *Jencks v. United States*, 353 U.S. 657 (1957). *See United States v. Rodríguez-Torres*, 939 F.3d 16, 32 n.10 (1st Cir. 2019).

[2] The parties' respective objections to the R&R remain under consideration and will be ruled upon in due course.

Case 3:21-cr-00320-ADC Document 195 Filed 02/27/25 Page 2 of 10

Crim. No. 21-320-1 (ADC-BJM) Page 2

**115, 119**. He heard testimony from, among others, Puerto Rico Police Bureau ("PRPB") agents Freddy Ruiz-Bonnet ("Agent Ruiz") and Freddy Muriel-Cintrón ("Agent Muriel"), who had been tasked with executing defendant's arrest. Both agents testified as to the investigation that led to defendant's arrest in a house rented by Yarimar Avilés-Colón, sister of co-defendant Sonia Avilés-Colón. As part of their investigation, and as relevant here, the agents had a telephone conversation the night before the arrest with the owner of the property, Daniel Casiano-Rivera ("Mr. Casiano"), who confirmed that defendant resided there. *See* Mot. to Suppress Hr'g Tr. 165:22-166:2, 170:10-171:18, June 6, 2023, **ECF No. 132**.

Agent Muriel testified that he and Agent Ruiz took notes during their investigation and that these were kept in a binder under the control of Agent Ruiz. *Id.*, at 173:19-175:5. Counsel for defendant then requested the notes as *Jencks* materials. *Id.*, at 175:6-7. The Magistrate Judge ordered the government to search for and review the notes for possible *Jencks* material and hand them over to defendant, if appropriate:

> Okay, here's how we'll proceed. The notes related to this case will be turned over to the Assistant United States Attorney, the prosecutor, okay, and the prosecutor will look at those to see if there is any Jencks material that has not been disclosed so far and reminding the definition of Jencks material, it is material that relates to the testimony given on direct. Okay, if there's something there that doesn't have anything to do with what was testified on direct, then that would not be Jencks but if it is something that was testified to, then the prosecutor has to turn that over to the defense. All right.

*Id.*, at 175:8-19. On the final day of the suppression hearing and after performing the review, the government represented that it had not been able to locate any notes from Agent Muriel, but that they had handed over notes made by Agent Ruiz which, the government suggested, could

Case 3:21-cr-00320-ADC Document 195 Filed 02/27/25 Page 3 of 10

Crim. No. 21-320-1 (ADC-BJM) Page 3

be the notes Agent Muriel was referring to. *See* Mot. to Suppress Hr'g Tr. 264:12-265:16, June 9, 2023, **ECF No. 133**. The defense nonetheless requested that Agent Muriel's testimony be stricken from the record based on his statement that he had prepared notes. *Id.*, at 263:5-264:9, 266:14-267:2.

The Magistrate Judge took the matter under advisement and the hearing ran its course, culminating in the R&R. Both defendant and the government filed objections to the R&R, **ECF Nos. 127** and **128**, respectively. There, no mention is made of the dispute about the notes. Defendant now alleges that the government produced more notes from Agent Ruiz on July 17, 2024, more than a year after the suppression hearing concluded. **ECF No. 153** at 2. Defendant further claims that Agent Muriel's notes are still outstanding. *Id.* For these reasons, defendant requests the Court set aside the R&R, strike the agents' testimonies, and hold another suppression hearing.

The government, for its part, responded to the alleged *Jencks* violation by explaining that four pages of notes written by Agent Ruiz were indeed handed over to the defense at the time the issue came up during the suppression hearing. **ECF No. 175** at 2. More recently, however, during the course of trial preparation, the government interviewed Agent Ruiz on July 17, 2024. *Id.*, at 3. There, the government first became aware of the existence of additional notes prepared by Agent Ruiz. *Id.* The government immediately contacted defendant's attorney, reviewed the notes, and produced them to the defense. *Id.* While admitting that the disclosure is late, the government contends that defendant fails to explain what prejudice, if any, he suffered due to

the late disclosure. *Id.*, at 7-8. The government further highlights that defendant conflates the late disclosure of Agent Ruiz's notes with the absence of any notes from Agent Muriel, whose testimony should not be implicated by the *Jencks* violation. *Id.*, at 7.

On reply, defendant contends that he has suffered prejudice because he was not able to effectively cross-examine Agent Ruiz during the suppression hearing with "the lack of information in his notes." **ECF No. 182** at 4. Defendant suggests that he would have asked him why he "failed to write in his notes that the owner of the property told him that [defendant] was the individual who was in his property." *Id.* Moreover, as to Agent Muriel, defendant posits that "just as [A]gent Ruiz's notes existed," his notes "also exist." *Id.*, at 5. Defendant reasserts his position that Agent Muriel testified that he took notes with Agent Ruiz, "therefore he adopted these notes and statements as his own." *Id.* And because the R&R relies on Agent Muriel's testimony, defendant he has suffered further prejudice. *Id.*

## II. Legal Standard

Pursuant to the Jencks Act, a defendant may move to compel the production of certain government witness statements in the government's possession once that witness has testified on direct examination for the. 18 U.S.C. § 3500(b); Fed. R. Crim. P. 26.2(a). The compelled statement must fall into either one of three categories:

> (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

Case 3:21-cr-00320-ADC   Document 195   Filed 02/27/25   Page 5 of 10

Crim. No. 21-320-1 (ADC-BJM) Page 5

> (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e); *see also* Fed. R. Crim. P. 26.2(f). Pursuant to Fed. R. Crim. P. 26.2(g), this obligation extends to witnesses that testify in pretrial suppression hearings under Fed. R. Crim. P. 12. The government's failure to produce a *Jencks* statement upon order of the Court entails the striking of the witness' testimony. 18 U.S.C. § 3500(d); Fed. R. Crim. P. 26.2(e). However, "[i]n order to prevail on an alleged violation of the Jencks Act, a defendant must show that he was prejudiced as a result of the Government's nondisclosure of a qualifying statement." *United States v. Colón-Diaz*, 521 F.3d 29, 39 (1st Cir. 2008).

### III. Discussion

The issue that underpins defendant's request for relief under *Jencks* is the ambiguity as to whether Agents Ruiz and Muriel memorialized their conversation with Mr. Casiano, owner of the property in which defendant was arrested. In that conversation, Mr. Casiano identified defendant as the person that was staying at his property. Agent Ruiz stated that he had not memorialized it, but Agent Muriel said that they did. That testimony activated the government's duty under *Jencks*, Fed. R. Crim. P. 26.2, and L. Crim. R. 116 to search for and produce those notes. The notes found at the time were few and defendant chose not to recall Agent Ruiz to testify as to them. But a year later, the government produced over 70 pages of Agent Ruiz's notes and "Steps Taken" reports on the investigation. In one of these, Agent Ruiz memorialized his conversation with Mr. Casiano. No notes were found as to Agent Muriel, which begs the question of what notes he was referring to in his testimony.

### A. Agent Ruiz's notes.

As to Agent Ruiz, the ultimate question is whether prejudice accrued to defendant from not having his notes on hand during his cross-examination at the suppression hearing. Assuming that defendant has established that the notes are properly "statements" within the meaning of the Jencks Act and Fed. R. Crim. P. 26.2(f), and that the notes relate to the subject matter of his direct testimony,[3] the government is ultimately correct in that defendant has failed to articulate a case for finding prejudice. Neither plaintiff's motion nor reply point to any discrepancy between the contents of the notes and Agent Ruiz's testimony. Moreover, as opposed to plaintiff's claim in his reply, Agent Ruiz's notes clearly memorialize that Mr. Casiano identified defendant through photographs as the person that was occupying the property: "I show[ed] him pictures of Mr. Carlos M. Cotto Cruz to what Mr. Casiano Rivera observed and answered and affirmed (yes) that he can identify Mr. Carlos M. Cotto Cruz aka Wasa, as the gentleman that was staying at his residence, rented by a female . . . ." **ECF No. 178-1** at 2.[4] The

---

[3] A generous assumption, given that a review of Agent Ruiz's testimony shows that he did not directly testify about the conversation with the owner of the property. *See*, *generally*, Mot. to Suppress Hr'g Tr. 101:6-145:12, May 25, 2023, **ECF No. 131**. He testified on cross-examination about receiving information from an unspecified source that someone had seen defendant entering the property, but he was not asked who. *Id.*, at 128:10-17. On the other hand, the conversation with the owner is reflected in the testimony of Agent Muriel, and mostly during cross-examination. *See* Mot. to Suppress Hr'g Tr. 165:22-166:2, 170:10-171:18, June 6, 2023, **ECF No. 132**.

[4] The government attached copies of the original Spanish language notes to its response to defendant's motion and later submitted translated copies at **ECF No. 178**. The copy of the original note cited above, dated May 6, 2021, spans two pages and Agent Ruiz's signature and badge number appear on the first one. **ECF No. 175-1** at 3-4. The translation, however, lacks his signature and badge number in what appears to be a clerical error by the translator. **ECF No. 178-1** at 2.

Case 3:21-cr-00320-ADC   Document 195   Filed 02/27/25   Page 7 of 10

Crim. No. 21-320-1 (ADC-BJM)                                                                 Page 7

Court thus has no basis to find that the government's tardy disclosure of Agent Ruiz's notes prejudiced defendant's ability to impeach him on cross-examination.

### B. Agent Muriel's notes, or lack thereof.

As to Agent Muriel, the question is whether the government violated its *Jencks* obligations when it represented that it has not found any notes made by Agent Muriel even though he testified that notes existed and were kept by Agent Ruiz. Specifically, Agent Muriel testified on cross-examination that he prepared notes and that these were kept in a confidential investigatory binder, which was kept under the custody of the PRPB's Division of Special Arrests and Extraditions. Mot. to Suppress Hr'g Tr. 174:19-175:2, June 6, 2023, **ECF No. 132**. He further testified that in that binder, kept by Agent Ruiz as the "investigating agent… who is in charge of the arrest[,] you're going to find notes from yours truly and from Agent Ruiz because we were both working together this case." *Id.*, at 175:18-176:5.

But immediately before that, he testified that "I did not prepare a report. It was prepared by my partner, [Agent Ruiz]." *Id.*, at 171:20-21. He also went on to state that "we did [sic] notes" that were kept in the "confidential investigatory binder" that "we have." *Id.*, at 172:9-18. He also identified Agent Ruiz as the lead investigative agent in the case and custodian of the binder. *Id.*, at 174:20-25. So, even though Agent Muriel later answered "yes" to a compound question implying that he ("you") had taken notes of the investigation, and that he later also referred to "notes from yours truly and from Agent Ruiz," there is no compelling reason to believe that he was referring to his individual notes rather than notes or reports made by Agent Ruiz based on

their joint investigatory efforts. In other words, Agent Muriel's testimony is not unequivocal on the existence of notes beyond those that the government recently produced, belonging to Agent Ruiz.

During the third and last day of the suppression hearing, the government informed the Court that it had not found any notes from Agent Muriel. *See* Mot. to Suppress Hr'g Tr. 263:10-13, 264:12-22, June 9, 2023, **ECF No. 133**. The government made both Agents Ruiz and Muriel available to be recalled to the stand to clarify their statements about the existence of the notes. *Id.*, at 265:1-266:12. Defendant, however, chose not to recall either witness, relying instead on the testimony already on the record to insist that it be stricken for failure to disclose the notes. *Id.*, at 266:14-267:2. The Court took the matter under advisement, but nonetheless left open the possibility of recalling Agent Muriel at the end of the hearing. *Id.*, at 267:3-7. Neither party raised the issue when the hearing concluded.

These facts present two issues. First, it is not clear whether Agent Muriel's reference to notes in his testimony concerns his individual notes or joint notes taken by or with Agent Ruiz. His testimony suggests that the surveillance conducted before the arrest was done jointly with Agent Ruiz. *See* Mot. to Suppress Hr'g Tr. 153:23-154:17, June 6, 2023, **ECF No. 132.** It is entirely plausible that Agent Muriel referred to Agent Ruiz's notes as his own given that they had been working together. That leads into the second issue, which is that the testimony of Agent Muriel is insufficient to establish that his notes are statements under *Jencks*. If they are not signed, adopted, or approved by the witness, investigative notes are not statements within the meaning

of the Jencks Act or Fed. R. Crim. P. 26.2(f). Here, there is no indication from the record that the notes he referenced were adopted or approved by him and defendant did not ask him to state as much. It is entirely plausible that, to the extent Agent Muriel made any notes on his own, they were incorporated into Agent Ruiz's notes or the "Steps Taken" reports detailing their investigation into defendant's whereabouts. That puts these notes, to the extent they exist, outside the scope of the Jencks Act and Fed. R. Crim. P. 26.2.

Finally, the Court cannot leave unmentioned that defendant had the opportunity to recall both agents to clarify the existence of their notes but refused to do so. Defendant elected to rely on testimony that could not withstand the weight of his request. Defendant could have clarified with Agent Ruiz whether the notes then produced by the government were complete. He could have also clarified with Agent Muriel whether he himself had written notes separate from his partner's. But defendant chose the route of ambiguity. The First Circuit has a longstanding position of treating "with skepticism . . . claims of prejudice [under *Jencks*] when accompanied by a failure to attempt at trial to mitigate the perceived harm." *United States v. Arboleda*, 929 F.2d 858, 864 (1st Cir. 1991) (cited approvingly in *United States v. Sandoval*, 6 F.4th 63, 90-91 (1st Cir. 2021)). Here, that skepticism is warranted.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** defendant's motion at **ECF No. 153** to set aside the R&R and hold a *de novo* suppression hearing.

Case 3:21-cr-00320-ADC    Document 195    Filed 02/27/25    Page 10 of 10

**Crim. No. 21-320-1 (ADC-BJM)** **Page 10**

Notwithstanding the above conclusion, the Court is compelled to point out that the government's late disclosure is unacceptable. It is concerning that, after hearing a police officer testify that there is a binder that contains investigative notes, the government evidently did not care to request and review that binder for possible *Jencks* materials. If it had, it would have found the 70-plus pages of notes from Agent Ruiz. Instead, it only produced four pages of notes which, presumably, came from the same binder that the government should have reviewed and where it presumably found the remaining set of notes. While the defendant here has failed to meet the *Jencks* standard for obtaining relief, the government is sternly warned that, going forward, the Court will expect its strict adherence to its duty to disclose.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 27th day of February, 2025.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**